**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

DONALD GRIFFIN,

        Petitioner,

 v.              No. 09-CV-1334
                   (TJM/CFH)
Superintendent,

        Respondent.

---

**APPEARANCES:**        **OF COUNSEL:**

DONALD GRIFFIN
87-A-0320
Petitioner Pro se
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, NY 14411

HON. ERIC T. SCHNEIDERMAN    PAUL B. LYONS, ESQ.
Attorney General for the       Assistant Attorney General
 State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

 Petitioner pro se Donald Griffin ("Griffin") is currently an inmate in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS") at Orleans Correctional Facility ("Orleans"). On January 9, 1987, after a jury trial in the Kings

---

[1] This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c). This case was originally assigned to Magistrate Judge David Peebles, but was re-assigned to the undersigned on January 7, 2013. Dkt. No. 55.

County Supreme Court, Griffin was convicted of two counts of robbery in the first-degree, one count of robbery in the second-degree, two counts of grand larceny in the third-degree, two counts of sexual abuse in the first-degree, and one count of burglary in the first-degree. People v. Griffin, 161 A.D.2d 799, 799 (2d Dep't 1990). Griffin was sentenced to, and is presently serving, fifteen to thirty years. Pet. (Dkt. No. 47) ¶ 3. Griffin does not contest his judgment of conviction, but now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the October 28, 2008 decision of the New York State Division of Parole, denying his application for release to parole supervision. Pet. ¶ 11(A). For the reasons that follow, it is recommended that the petition be denied.

## I. Background

On September 23, 1985, Griffin and another man robbed a woman at her apartment. Griffin, 161 A.D.2d at 799. The woman was accompanied by her two infant children. Id. During the course of the robbery, the woman was ordered to remove her clothes, at which point, one of the men touched her vagina and felt her breasts. Id. Three days later, while carrying a shotgun, Griffin robbed a woman who was accompanied by her young child. Id. Griffin "reached into the [woman's] blouse and touched her breasts." Id. Griffin was subsequently apprehended, prosecuted, convicted, and incarcerated. See generally id.

At his parole hearing dated October 28, 2008, Griffin, inter alia, explained that he refused to take the Sex Offender Counseling and Treatment Program ("SOCTP") because such participation required the assumption of responsibility for both sex offenses when he only conceded to responsibility for the second sexual abuse offense. Dkt. No. 54-2 at 4–6;

Dkt. No. 54-3 at 2.[2] However, participation in SOCTP does not require an inmate's admission to the commission of a crime. Dkt. No. 54-3 at 8. Because Griffin is a Jehovah's Witness, and such an assumption of guilt would render him a liar, taking the SOCTP would be against Griffin's religious beliefs. Dkt. No. 54-2 at 4–6. The parole board denied Griffin release to parole supervision and held him for an additional twenty-four months. Id. at 11. The parole board explained that its decision was based on the following:

> You continue to serve time for your crimes of robbery, sexual abuse and assault.
>
> You[,] on two occasions[,] did produce a double-barrel shotgun and robbed female victims of their jewelry and cash, as they road [sic] in elevators with small children. Although you denied, records indicate you sexually fondled at least one of the two victims.
>
> Since your last Board, you've incurred a Tier III ticket for creating a disturbance resulting in SHU time. You continue to refuse programming due to your religious beliefs.
>
> The Panel notes all relevant factors required by law, including [Griffin's] insightful and encouraging interview. However, due to the seriousness of the instant offense, the violence of your criminal history and your refusal to program, release at this time is denied.

Id. at 11–12.

---

[2] "[R]efusing to participate in the required Sex Offender Counseling and Treatment Program . . . may result in . . . [a] negative decision by the NYS Board of Parole." Dkt. No. 54-3 at 2. DOCCS's SOCTP Guidelines direct that, "[p]articipants with low amenability to sex offender counseling and a high level of denial cannot be excluded from participating in the SOCTP." Dkt. No. 54-3 at 7. "[T]he primary purpose of the program is to reduce the likelihood of re-offending by assisting [an inmate] to control [his] chain of behaviors that lead to sexual offending." Id. at 8.

Griffin appealed the parole board decision to the Appeals Unit of the Division of Parole. Dkt. No. 54-4. First, Griffin contended that his right to freely exercise his religion under the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq., was violated because he was denied parole supervision due to his religious beliefs that prevented him from taking the SOCTP. Dkt. No. 54-4 at 3–4. Second, Griffin contended that the parole board erred in relying on the Tier III ticket in making its decision because Griffin never received the ticket referenced in the parole board's decision. Id. at 5. It appears, and respondent concedes, that the Appeals Unit never responded to Griffin's appeal. Resp't's Mem. (Dkt. No. 52) at 7–8. The Appeals Unit was required by regulations "to issue its findings and recommendation within four months of the date that the perfected appeal was received[; otherwise,] the appellant may deem this administrative remedy to have been exhausted . . . ." N.Y. COMP. CODES R. & REGS. tit. 9, § 8006.4(c) (2012).[3]

On July 1, 2009, Griffin commenced a New York Civil Practice Law and Rules ("CPLR") Article 78 proceeding in the Albany County Supreme Court challenging his parole denial and raising the same claims. Dkt. No. 54-5 at 8–11. On September 21, 2009, the Office of the

---

[3] The regulation reads, in relevant part,

> Should the appeals unit fail to issue its findings and recommendation within four months of the date that the perfected appeal was received, the appellant may deem this administrative remedy to have been exhausted, and thereupon seek judicial review of the underlying determination from which the appeal was taken. In that circumstance, the division will not raise the doctrine of exhaustion of administrative remedy as a defense to such litigation.

N.Y. COMP. CODES R. & REGS. tit. 9, § 8006.4(c) (2012).

4

Attorney General ("OAG") informed the court that because the parole board erroneously relied on the Tier III ticket, the Division of Parole decided to grant Griffin a de novo parole interview, which mooted the Article 78 petition. Dkt. No. 54-6 at 2. On September 26, 2009, Griffin filed an opposition to the OAG's letter. Dkt. No. 54-7. On November 16, 2009, a notice of entry was filed for a court order that directed the parole board to conduct a de novo parole release interview, which mooted the Article 78 petition. Dkt. No. 54-8 at 2–4; see Dkt. No. 54-9. A de novo parole interview was "the most relief to which [Griffin] would be entitled . . . ." Dkt. No. 54-9 at 4. While Griffin filed a notice of appeal to the Appellate Division on November 3, 2009, there is nothing in the record indicating that Griffin's appeal was perfected.[4]  Dkt. No. 54-12.

---

[4] Griffin had sixty-days to perfect his appeal, which he failed to satisfy. N.Y. COMP. CODES R. & REGS. tit. 22, § 800.9(a) (2012) directs that

> Except where a different time limit or a different number of copies of papers is otherwise permitted herein, appellant shall cause to be filed with the clerk of this court, within 60 days after service of the notice of appeal, either:
>
> (1) the original and nine copies of a reproduced full record and 10 copies of appellant's brief;
>
> (2) the single copy of the record, together with 10 copies of a brief and appendix; or
>
> (3) ten copies of the agreed statement in lieu of record and 10 copies of a brief; with proof of service of one copy of the record and two copies of the brief, or two copies of a brief and appendix, upon each respondent.

Id.

Griffin's de novo parole hearing took place on January 5, 2010. Dkt. No. 54-10. On January 11, 2010, Griffin was again denied parole. Dkt. No. 54-11. The parole board explained that the decision was based on the following factors:

> The serious nature of [Griffin's offenses] . . . involved [Griffin] acting in concert in gunpoint robberies where the female victims were in the company of small children. One of the victims was sexually abused. . . . You expressed little remorse for the victims and minimize your responsibility for your actions. Note is also made of your positive programming. However, all factors considered, discretionary release is not warranted at this time as you lack respect for the property and safety of others and the law.

Id. at 3–4.

On November 17, 2009, Griffin raised his First Amendment claims in a § 1983 action.[5] Dkt. No. 1. By Decision and Order dated September 14, 2011, the Court dismissed Griffin's complaint in its entirety and granted him leave to convert his complaint to a § 2254 petition. Dkt. No. 40. Griffin was granted thirty days to advise the court his desire to convert the complaint to a habeas corpus petition as well as additional leave to file a proper petition. Id. This petition followed.

---

[5] Pro se petitioners are deemed to have filed their habeas petitions on the date they turned them over to prison officials for mailing. See Houston v. Lack, 487 U.S. 266, 270 (1988); Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001) (extending the "prisoner mailbox rule" to habeas petitioners), cert. denied, 534 U.S. 886 (2001). Out of caution, this Court uses November 17, 2009, the date on Griffin's original petition, as the earliest possible date upon which Griffin could have turned over the complaint, now a petition, to prison officials for mailing.

6

**II. Discussion**

Griffin contends that his due process rights under the Fourteenth Amendment were violated when he was denied release to parole supervision for his refusal to attend the SOCTP, participation in which would have required him to lie, in contravention of his religious beliefs.[6]  Pet. ¶ 11(A).  Respondent contends that Griffin's petition should be denied because it is untimely and Griffin's claims are both unexhausted and meritless.

**A. Timeliness**

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a one-year statute of limitations period applies to the filing of federal habeas corpus petitions "by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1); Cook v. N.Y. State Div. of Parole, 321 F.3d 374, 279–80 (2d Cir. 2003).  The statutory limitation period begins to run from the latest of four events:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[6] In his petition, Griffin framed his claims as the right to freely exercise religion under the First Amendment and the RLUIPA.  Pet. ¶ 11(A).  However, the First Amendment protects the right to free exercise of religion, see generally Cutter v. Wilkinson, 544 U.S. 709, 719 (2005), not a constitutional right to be released to parole supervision, which is what Griffin challenges.  Thus, Griffin's petition is characterized to have alleged a due process claim as discussed infra.

7

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). In the context of challenges to administrative decisions, to determine the date on which the factual predicate of the claim could have been discovered through the exercise of due diligence, the Second Circuit has reasoned that the statute of limitations runs from when the petitioner "was notified that the administrative decision . . . had become final." Cook, 321 F.3d at 280; McPherson v. Burge, No. 06-CV-1076 (GTS/VEB), 2009 WL 1293342, at *5 (N.D.N.Y. 2009) (citations omitted).[7]

The AEDPA statutory limitation may be tolled when a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). "[A]n application for state review is 'pending' until it has achieved final review through the state's post-conviction procedures." McPherson, 2009 WL 1293342, at *5 (citations omitted). However, when the state application has achieved final review, the date from which the statute of limitations begins to run does not reset. Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000).

Here, Griffin does not challenge the judgment of his conviction, there was no state action that impeded Griffin from seeking habeas relief, and there was no issue involving the retroactive application of a newly recognized constitutional right. Thus, the statute of

---

[7] All unpublished opinions cited to by the Court in this Report-Recommendation are, unless otherwise noted, attached to this Recommendation.

limitations began to run from the date on which the factual predicate of Griffin's claims could have been discovered through the exercise of due diligence, which is when Griffin was notified that the parole hearing decision he challenges in this petition has become final.

Griffin challenges the parole hearing decision dated October 28, 2008.[8] He appealed that decision on February 21, 2009, which was administratively exhausted on June 22, 2009, four-months after which the Appeals Unit was statutorily required to issue a decision. Thus, Griffin's statute of limitations began to run on June 22, 2009 and would have expired on June 22, 2010. However, the statute of limitations was tolled beginning on July 1, 2009, when Griffin commenced an Article 78 proceeding, which sought to appeal the decision to deny Griffin parole supervision. After his Article 78 petition was dismissed, Griffin filed a pro se notice of appeal dated November 3, 2009. Because the appeal was deemed abandoned on August 3, 2010, which was nine months after the notice of appeal was filed, N.Y. COMP. CODES R. & REGS. tit. 22, § 800.12 (2012),[9] August 3, 2010 serves as the date of final review by a state court. Thus, Griffin's habeas petition was tolled from July 1, 2009 through August 3, 2010.

Griffin commenced a § 1983 action on November 17, 2009. On September 14, 2011, this Court granted Griffin leave to advise the Court his intention to convert his complaint and

---

[8] In the alternative, even if Griffin made his claim based on the January 11, 2010 parole board decision, the petition would still be dismissed for non-exhaustion and lack of merit. See subsections II(B) & (C) infra.

[9] In relevant part, N.Y. COMP. CODES R. & REGS. tit. 22, § 800.12 (2012), states, "A civil appeal or proceeding shall be deemed to have been abandoned where appellant or petitioner shall fail to serve and file a record and brief within nine months after the date of the notice of appeal or order of transfer . . . ." Id.

9

additional leave to convert his complaint to a habeas petition. Griffin timely advised the Court of his intention to convert and did so on June 18, 2012. Dkt. report entry dated 5/21/2012; Dkt. No. 47. Respondent argues that, pursuant to Fed. R. Civ. P. 15(c), this Court should not find Griffin's petition to relate back to Griffin's § 1983 action. Resp't's Mem. at 17–18. However, Griffin's petition was not styled as an amendment to a pleading. Rather, Griffin was granted leave to convert his complaint into a habeas petition. Thus, the operative filing date was November 17, 2009, not June 18, 2012. Nine days passed between when Griffin exhausted his administrative remedies and commenced an Article 78 proceeding. Griffin commenced the § 1983 action during the statutory tolling period. Therefore, as only nine days had passed during the one-year time period, Griffin's petition was timely filed.

Accordingly, the petition should not be denied as time-barred.

### B. Exhaustion

It is well-settled that before seeking habeas review, a petitioner must first exhaust all state remedies. 28 U.S.C. § 2254(b), (c); Shabazz v. Artuz, 336 F.3d 154, 160 (2d Cir. 2003) (quoting Aparicio v. Artuz, 269 F.3d 78, 89 (2d Cir. 2001)). Specifically, § 2254(b)(1) directs that

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(I) there is an absence of available State corrective process; or

>     (ii) circumstances exist that render such process ineffective to
>     protect the rights of the applicant.

28 U.S.C. § 2254(b)(1)(A), (B).

The exhaustion principle is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991). Under § 2254(b)(1)(A), "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). State remedies are "*properly* exhausted" when the petitioner has "fairly presented" to the state court, O'Sullivan, 526 U.S. at 848, "both the factual and legal premises of the claim he asserts in federal court." Daye v. Attorney General of New York, 696 F.2d 186, 191 (2d Cir. 1982) (citations omitted). The petitioner may fairly present the constitutional nature of his claim by

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Id. at 194. The petitioner bears the burden of proving exhaustion. Colon v. Johnson, 19 F. Supp. 2d 112, 119–20 (S.D.N.Y. 1998) (citations omitted).

In New York, a challenge to a parole board decision must be made through an Article 78 petition, ordinarily in state supreme court.[10] CPLR § 7802(b); see, e.g., McCormick v. Morrisey, 770 F. Supp. 2d 556, 564 (W.D.N.Y. 2011); Scales v. New York State Div. of

---

[10] Section 7802(b), in relevant part, provides that, "a proceeding . . . may be maintained against an officer exercising judicial or quasi-judicial functions . . . ." Id.

11

Parole, 396 F. Supp. 2d 423, 428 (S.D.N.Y. 2005) ("To exhaust a denial of parole under New York law, the inmate . . . must seek relief in state court pursuant to Article 78." (citation omitted)). If the state supreme court rules against the petitioner, the petitioner may seek an appeal by permission from the Appellate Division. CPLR § 5701(b)(1). If the petitioner receives an adverse ruling from the Appellate Division, then he may seek leave to appeal to the Court of Appeals. CPLR § 5602(a). When an Article 78 raises a "substantial evidence issue," the Article 78 must be transferred directly to the appropriate Appellate Division. CPLR § 7804(g).

In this case, Griffin has failed to meet his burden of satisfying the exhaustion requirements. The state court dismissed Griffin's Article 78 petition because it was rendered moot. Griffin has failed to show that he perfected his appeal to the Appellate Division, then subsequently, to the Court of Appeals. Griffin also failed to show that he appealed his parole hearing decision dated January 11, 2010. Thus, Griffin has failed to exhaust his state remedies.

Nevertheless, a claim that was not fairly presented to the state courts and does not satisfy the requirements of § 2254(b)(1) may still be "deemed" exhausted by the habeas court "if it is clear that the state court would hold the claim procedurally barred." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (collecting cases); Aparicio, 269 F.3d at 90 ("When a claim has never been presented to a state court, a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(I) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile."). Here, because the record does not indicate whether Griffin perfected his appeal, it is unclear that the unexhausted claim is

12

procedurally barred by state law. Thus, the Court cannot deem Griffin's claims to be exhausted.

Accordingly, the petition should be denied for non-exhaustion.

## C. Merits

"An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2), accord, Rhines v. Weber, 544 U.S. 269, 277 (2005). However, § 2254(b)(2) "does not provide a standard for determining when a court should dismiss a petition on the merits rather than requiring complete exhaustion." Otero v. Stinson, 51 F. Supp. 2d 415, 420 (S.D.N.Y. 1999) (internal quotation marks omitted) (collecting cases). A majority of district courts in the Second Circuit "have expressed the test as whether the unexhausted claim is 'patently frivolous.'" Cummings v. Conway, No. 09-CV-740 (MAT), 2011 WL 2516581, at *4 (W.D.N.Y. June 23, 2011) (collecting cases). On the other hand, a minority of courts exercised discretionary review when "it [was] perfectly clear that the [petitioner] d[id] not raise even a colorable federal claim." Id. (internal quotation marks omitted) (collecting cases). Under either standard, Griffin has failed to establish that he is entitled to habeas relief.

### i. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may grant a writ of habeas corpus only if the state court's adjudication on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000); Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006); DeBerry v. Portuondo, 403 F.3d 57, 66 (2d Cir. 2005).

The Supreme Court has given independent meaning to the "contrary to" and "unreasonable application" clauses in § 2254(d)(1). Williams, 529 U.S. at 405. "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 412–13. As for the "unreasonable application" clause, a writ may be granted if "the state court's application of clearly established federal law was objectively unreasonable." Id. at 409, 413. "[A]n unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. In addition, the statutory phrase "clearly established Federal law . . . refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions . . . ." Id. at 412 (internal citations omitted).

The petitioner bears the burden of proving, by a preponderance of the evidence, that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28

14

U.S.C. § 2254(a); see also Smalls v. Batista, 191 F.3d 272, 278 (2d Cir. 1999); Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997). Further, when evaluating a habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); DeBerry, 403 F.3d at 66.

### ii. Fourteenth Amendment

Liberally construing Griffin's petition, Bell v. Ercole, 631 F. Supp. 2d 406, 413 (S.D.N.Y. 2009) (citation omitted), the only constitutional claim that is implicated by Griffin's allegations is under the Due Process Clause of the Fourteenth Amendment. As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). A convicted individual does not have a constitutional right to be conditionally released before his sentence expires. Greenholtz v. Inmates of the Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979). "[F]or a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme." Barna v. Travis, 239 F.3d 169, 170 (2d Cir. 2001) (listing cases). The Second Circuit has concluded that the New York State parole system does not create such an expectancy. Id. at 171. Because inmates in the New York State do not have a liberty interest in parole, the Due Process Clause does not apply to Griffin's claims. Id. Thus, Griffin has failed to establish a protected constitutional interest.

> [T]o the extent that a New York State inmate has any liberty
> interest in parole that is protected by the Due Process Clause of
> the Fourteenth Amendment, that interest extends only to not

15

>being denied a parole release 'arbitrarily' or 'capriciously,' for example, based on an inappropriate consideration of a protected classification (such as race, religion, gender, economic status, etc.) or an 'irrational distinction.'

Standley v. Dennison, No. 05-CV-1033, 2007 WL 2406909, at *9 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J. and Lowe, M.J.) (Dkt. No. 38 at 116–140) (citing Meachum v. Fano, 427 U.S. 215, 226 (1976) and other New York Court of Appeals cases). In this case, Griffin's claim is based solely on one of the parole board's reasons for denying him parole release, that he continued to refuse programming, even though he claimed that participation would be in contravention to his religious beliefs. However, Griffin also admitted to committing sexual abuse against at least one female complainant. In light of Griffin's admission and the parole board's power and duty to determine an inmate's "ultimate fitness to be paroled,"[11] the October 28, 2008 decision does not amount to a substantive due process violation. Further, participation in the SOCTP was not a substantial burden on Griffin's exercise of his religion as he was not required to admit to the commission of any crime. Thus, to the extent that Griffin made a substantive due process claim, such a claim must fail because the parole board's decision was not contrary to, or involved an unreasonable application of, clearly established federal precedent.

Even assuming that Griffin has a liberty interest in being conditionally released before the expiration of his sentence, Griffin would only be "entitled to an opportunity to be heard and a statement of the reasons why parole was denied." Robles v. Dennison, 449 F. App'x

---

[11] "The state board of parole shall . . . through its members, officers and employees, study or cause to be studied the inmates confined in institutions over which the board has jurisdiction, so as to determine their ultimate fitness to be paroled . . . ." NY. EXEC. LAW § 259-c(5) (McKinney 2012).

16

51, 53 (2d Cir. 2011) (citing Greenholtz, 442 U.S. at 16), accord Swarthout v. Cooke, __ U.S. __, 131 S. Ct. 859, 862 (2011) (per curiam) ("In the context of parole . . . [Due Process] procedures required are minimal. In Greenholtz, . . . a prisoner subject to a parole statute similar to California's received adequate process when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied." (citation omitted)). Here, Griffin does not contend, nor does the record reflect otherwise, that he was either deprived of a formal parole hearing or a statement of reasons explaining why he was denied parole. In fact, the record shows the contrary, including copies of transcripts from Griffin's hearings as well as statements enumerating the reasons for denying Griffin release to parole supervision. Thus, Griffin received all the process that was due and his procedural due process claim must also fail because the parole board's decision was not contrary to, or involved an unreasonable application of, clearly established federal precedent.

Accordingly, in addition to being denied for non-exhaustion, the petition should also be denied on the merits.

### III. Conclusion

For the reasons stated above, it is hereby:

1. **RECOMMENDED** that Griffin's petition for a writ of habeas corpus (Dkt. No. 47) be **DENIED**; AND

2. Furthermore **RECOMMENDED** that no certificate of appealability should be issued with respect to any of Griffin's claims as Griffin has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). See 28 U.S.C. § 2253(c)(2) ("A certificate of appealability

may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); see also Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000).

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: January 31, 2013
       Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge